UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MAE MOSLEY

                Plaintiff,

-vs-                                                Case No:

BRIGGS & STRATTON CORP.

                Defendant.

## COMPLAINT

This is a civil action alleging deprivation of the plaintiff, Mae Mosley's rights under 42 U.S.C. Section 1981. Specifically, Ms. Mosley, an African American Female, alleges that she was subjected to differential treatment in the terms and conditions of her employment with Briggs & Stratton Corp. (hereinafter, "defendant") because of her race and gender, and because she opposed discriminatory practices in the manner by which the defendant hired, promoted, and retained employees.

### I. JURISDICTION AND VENUE

1. This court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331.

2. Venue in this action lies in the Eastern District of Wisconsin pursuant to 28 U.S.C. § 1391(b).

## II. PARTIES

3. The plaintiff, Mae Mosley, is an adult resident of the State of Tennessee currently residing at 12742 Shady Ridge Lane, Farragut, TN 37934. The plaintiff is an African American Female.

4. The defendant, Briggs & Stratton Corporation is a corporation licensed to do business in the State of Wisconsin whose current business address is 12301 West Wirth Street, Wauwatosa, Wisconsin 53222 and whose registered agent for the purposes of service of process is Robert F. Heath, 12301 W. Wirth Street, Wauwatosa, WI 53222.

5. The Defendant is an employer within the meaning of and subject to the provisions of 42 U.S.C. § 1981.

## III. FACTUAL ALLEGATIONS

6. The Plaintiff began her employment with the Defendant on August 23, 1977.

7. Over the course of her career, the Plaintiff was disparately paid and promoted in comparison to her male and non-minority counterparts.

8. This differential treatment of African Americans and Women is part of a consistent pattern and practice of the Defendant.

9. On multiple occasions over the past 10 years, the Defendant has been forced to make pay adjustments when compliance studies revealed that women and minorities were grossly underpaid.

10. Beginning in at least 2003, and each year thereafter until her employment ended in December 2007, the Plaintiff voiced her desire to be promoted to Vice

President, a title that was merited by the responsibilities and authority of her position and which would have typically resulted in promotion for her male and non-minority counterparts.

11. The promotion to Vice President has typically been awarded without the need to apply to those employees with the Plaintiff's demonstrated ability to perform at the level she had been performing and whose position had the responsibilities and authority incumbent in her position.

12. It is a promotion that opens the door for greater compensation through salary, bonuses, promotion, and leadership opportunities in the company.

13. As of December 2007, when the Plaintiff's employment ended, there were more than 40 Vice Presidents at Briggs & Stratton.

14. All of the more than 40 Vice Presidents at Briggs & Stratton were/are White; all but one were/are male.

15. The only significant difference between the Plaintiff and those promoted to Vice President was her race and gender.

16. In addition, unlike the White males who had risen to the level of Vice President, the Plaintiff was both vocal and active in promoting diversity at Briggs & Stratton, especially in regards to her disagreement with the cavalier attitude with which company leadership approached diversity initiatives.

17. The Plaintiff's position required her to examine diversity at Briggs & Stratton.

18. Her examination of the company's diversity culture revealed that a large number of minorities were leaving the company because of the lack of advancement opportunities for them.

19. The statistics gathered by the Plaintiff also revealed that White Men occupied a near exclusive majority of the company's leadership positions.

20. During the years 2005-2007, the Plaintiff voiced her concerns regarding this apparent discrimination and repeatedly expressed her concerns about the high number of minorities leaving the company over dissatisfaction with the company's promotion practices.

21. The Plaintiff was particularly sensitive to the evidence showing near zero representation of women and minorities at the highest levels of the company, specifically the Vice President level.

22. During 2006 and 2007, the Plaintiff pressed both Senior Vice President of Administration Thomas Savage and his direct report, Vice President of Human Resources Jeff Mahloch, that, based on her experiences and observations with respect to other similar promotions to the title of Vice President, she had earned the title of Vice President and that the duties and responsibilities of her position merited that title consistent with past practices of the company.

23. In April 2006, Mr. Savage assured the Plaintiff that her title change would be forthcoming at the end of the year.

24. But after the Plaintiff's positive 2006 performance review, Mr. Savage failed to deliver on that assurance and instead became agitated and critical when the Plaintiff reintroduced the subject.

25. After these criticisms, in late February 2007, the Plaintiff questioned Mr. Savage about the fact that her White male peers were being rewarded with the Vice President title as a matter of course, but her merits were being ignored.

26. Mr. Savage instructed the Plaintiff to "be patient," and that the promotion would be considered when her performance was reviewed in 2007.

27. The Plaintiff received her 2007 performance review on or about August 21, 2007.

28. The review was unfairly negative and inconsistent with company practices.

29. The review did not consider the goals established at the beginning of 2007, but instead contained criticisms from individuals who were not directly involved with her work initiatives or performance during the year.

30. None of the criticisms had been brought to the Plaintiff's attention during her regular meetings with Mr. Savage throughout 2007, but were first notified to her only in the written review.

31. The written review also stated that the Plaintiff "will speak her mind even though it may be looked at as career threatening."

32. The Defendant's unfair review of the Plaintiff's 2007 performance was motivated by its desire to not promote her to Vice President because of her race and the

5

fact that she had been outspoken about employment discrimination within the company, as evidenced by the fact that no African American female, and only one African American male, had ever held the title of Vice President in the near 100 year history of the company.

33. At the time, in approximately August 2007, the Defendant employed more than 40 individuals who held the title of Vice President. All of the more than 40 Vice Presidents were White. One was a White Female.

34. At the time, in approximately August 2007, the Plaintiff was the only person within the Defendant's employ with the title of "Assistant" Vice President.

35. At the time, in approximately August 2007, the Plaintiff was the highest ranking African American Female in the history of the company, a distinction (and title as Assistant Vice President) that she had held exclusively for more than 4 years without advancement.

36. The Plaintiff officially retired from Briggs & Stratton on December 31, 2007, stating: "While I've given so much of my career to try to make a difference in the way that Briggs & Stratton hires, pays, and promotes minorities and women, I feel forced into retirement because of the two things I cannot change – my gender and ethnicity."

37. Plaintiff therefore found her circumstances intolerable and concluded that she had no alternative but to retire. Defendants' unlawful conduct thus caused plaintiff to be constructively discharged from her employment.

6

38. The Defendant's treatment of the Plaintiff is part of a pattern and practice of treating racial minorities less favorably than their white counterparts.

## IV. FIRST CAUSE OF ACTION

39. For a first cause of action against the Defendant Briggs & Stratton Corporation under 42 U.S.C. Section 1981 the Plaintiff realleges each of the preceding paragraphs as though set forth herein.

40. In engaging in the conduct described in the preceding paragraphs, including but not limited to refusing to promote the Plaintiff to the title of Vice President, the Defendant discriminated against the Plaintiff on the basis of her race, in violation of her rights under 42 U.S.C. Section 1981.

41. The Defendant's conduct as described above caused the Plaintiff substantial damages including but not necessarily limited to front and back wage and benefit loss, loss of earning capacity, emotional distress, loss of reputation and humiliation and embarrassment. The Plaintiff will continue to suffer these damages in the future.

## V. SECOND CAUSE OF ACTION

42. For a second cause of action against the defendant Briggs & Stratton Corporation under 42 U.S.C. Section 1981 the Plaintiff realleges each of the preceding paragraphs as though set forth herein.

43. In engaging in the conduct described in the preceding paragraphs, including but not necessarily limited to refusing to promote the Plaintiff to the position

of Vice President, the Defendant retaliated against the Plaintiff for opposing unlawful discriminatory practices in violation of her rights under 42 U.S.C. Section 1981.

44. The Defendant's conduct as described above caused the Plaintiff substantial damages including but not necessarily limited to front and back wage and benefit loss, loss of earning capacity, emotional distress, loss of reputation and humiliation and embarrassment. The Plaintiff will continue to suffer these damages in the future.

## VI. CAUSE OF ACTION – PUNITIVE DAMAGES

45. The Defendant's actions as alleged above were intentional and undertaken with malice and reckless indifference to the Plaintiff's rights under 42 U.S.C. Section 1981 thereby entitling the Plaintiff to an award of punitive damages.

## VII. JURY DEMAND

The Plaintiff demands that the issues in the above-captioned matter be tried by a jury of twelve (12) persons.

WHEREFORE, the Plaintiff demands judgment in her favor on all of her claims and relief as follows:

A. Reinstatement with the title of Vice President, (with the appropriate bonus bracket designation);

B. Back wage and benefit loss;

C. Front pay and benefit loss;

D. Loss of earning capacity;

E. Compensatory damages in an amount to be determined;

F. Punitive damages in an amount to be determined;

G. Plaintiff's reasonable attorney's fees and costs incurred in bringing this action.

H. An order enjoining the defendant from further engaging in unlawful and discrimination practices; and

I. For such other relief as the Court may deem just and proper.

Dated at Monona, Wisconsin this 1st day of December, 2009.

Respectfully submitted:

Attorneys for the Plaintiff,

FOX & FOX, S.C.

_____
State Bar No. 1037925
735 W. Milwaukee Avenue, 12th Floor
Milwaukee, WI 53233
T: 414/326-3260
124 West Broadway
Monona, WI 53716
T: 608/258-9588
pfox@foxquick.com